May it please the court. Good morning. My name is Ethan Ballow and this morning I speak on behalf of Christopher George. I'm going to watch my clock and do my best to save two minutes. I'm going to begin with the Confrontation Clause hearsay issue and then address the ABNY error and I'm prepared to answer any questions your honors may have. To begin, in this case there was plain and obvious error by the District Court's admission of the DiRoberto's hearsay statements non-testimonial under this court's decision in Sousa-Martinez. Under that settled precedent, we established the first two prongs of the plain error test, which leads us to address the third and fourth prongs. Did it affect Mr. George's substantial rights and should the court notice the error? And I would argue there's five reasons why the court should find the third and fourth prongs have been satisfied in this case. First, Mr. George's substantial rights were in fact affected because he did not have the opportunity to cross-examine Crystal Buck. And when Crystal Buck made statements about what she did working in a different building at 21st Century and described her culpability, he lacked the ability to prove that she got instructions from Andrew Ramirez, not him, that he did not participate in the event she was describing, that he had no role in that. And that alone should get us over the third prong. In addition, this was an extraordinarily close case. After about 12 days, including voir dire, testimony, and argument, the jury deliberated for seven days. That's an extraordinary amount of time. And they returned from their deliberations, they delivered a split verdict, acquitting him of the first four counts and convicting him of the last six. Notably, the last six counts were all counts involving Mr. DiRoberto and Ms. Buck's conduct, whereas the first four counts did not. I expect that the other side is going to say harmless error because there's so much other evidence that comes in that's properly admitted. How do you respond to that? I'll respond to that in a couple of ways, Your Honor. I think that's exactly what they're going to say. One, I think, when we look at what they emphasized in closing, they didn't emphasize the other evidence. They emphasized an interwoven holistic delivery, why 21st Century was guilty, sprinkling in Buck's and DiRoberto's guilt as a way to tar Mr. George. Two, it was contested, like this Court's decision in Callan. He testified not only that he wasn't responsible for this. In addition, there was four separate witnesses, three called by the government who supported his defense, who said he told his employees to be honest. He didn't tell them to save the Obama plan. He didn't tell them to stop paying their mortgage. So when overwhelming evidence isn't the vehemence of your position, it's whether it's contested under this Court's decision in Callan, which I think is really right on point, is whether or not the defendant presented a plausible defense that if accepted would have led to acquittal. And based on his testimony in Callan emphasized the defendant's testimony alone, if plausible, is sufficient to overcome that argument. But his testimony, plus the four other witnesses, made it a doubt. Why wasn't there an objection made at trial? I think counsel missed it. The government missed it. It's a Crawford error, especially for both. Saz and Martinez may be a little different, but Buck's testimonial hearsay is this obvious Crawford error. I have no idea why he didn't object and say it should not be admitted and not have the opportunity. You'll note on ER 213 and 214 when counsel attempted to cross-examine the agent who had introduced Ms. Buck's testimony about other things she said during the interview, he was stymied. And obviously the better objection would have been it should not have been admitted. You were not obviously trial counsel. I was not. I'm a little worried about sandbagging, so I asked the question. If you read the closing arguments and you read the post-trial motions where he missed that again, I would find it, and I'd urge you to read both of them, I find the notion of sandbagging to be difficult to establish on this record. But if the objection had been made, it was a problem that could have been fixed. Yes, absolutely, and that's why we have the third and fourth prongs, which is the challenge we have, and we, I don't want to say embrace the standard, but we recognize it and concede it because that's where we are. And obviously if he objected and it wasn't fixed, this would be an immediate boomerang, and it would be obviously back there. So I accept the Court's recognition that is the problem on the third and fourth prong, but I think when we look at Leal del Carmen, when we look at Velarde Gomez, when we look at Callan, the metrics of lengthy deliberations, split verdict, defense testimony, corroborating evidence, under this Court's prescience, establish, especially when there's established constitutional error, the right to a new trial. And unless the Court wants to explore that issue more, what I would do then is I'd like to talk a little bit about the Abney error, which the effect of if you grant relief under Abney, it would just lead to a plenary resentencing. And Abney was very similar to this case. What happened in Abney is, you know, on occasion the Sentencing Commission does something extraordinarily good for defendants, or the Congress does, and it was the Fair Sentencing Act, which was addressed in Abney, which lowered mandatory minimums, changed the guidelines for crack cocaine. In this case, the long-awaited amendments to 2B1.1, where the Commission recognized that these lost tables and some of the ways we had enhancements under the fraud and larceny cases were too high, that they weren't based in data, that they were leading to extraordinarily high sentences. Those were just about to take place on November 1, 2015. And the defense counsel wanted a continuance. He asked for a continuance to December, so Mr. George could be sentenced contemporaneously with a different cooperating witness, Ramirez's boyfriend. If we send back for resentencing on another ground, does he get the benefit of the amendments? He does. So if you get, if you win on the question of the enhancement on behalf of the government, for example, we don't need to reach this IAC question? Exactly right. If you find Lambert and Treadwell error because they didn't make the necessary statements that they were acting on behalf of Obama and trying to induce people that way, we get to the same result. And we essentially get to the same result even if you address the affected financial institution sufficiency claim, because those would only knock out three of the counts and would just result in a plenary sentencing. So if it goes back for resentencing on any ground, you get the current guideline? I get the benefit of the Abney argument. Let me ask you about that, because the co-defendant appealed on the same facts and another panel, unpublished, understood, upheld the Treadwell enhancement. It's kind of an odd situation where you'd have two panels of the same court looking at the same facts and coming to a completely different resolution. How can we distinguish? Is there something about the two defendants we can say that guy is different than this guy? I think you can. I think it's the measure of the argument that's been presented. Mr. Giroberto did not cite Lambert, which actually controls more than Treadwell, and didn't bring it to the court's attention when he litigated it. He actually didn't even cite Treadwell. More importantly, he did not cite the advisory committee notes, which are authoritative and binding on the district judge, and he did not inform this panel that the advisory committee notes, the commentary, established the exact point where they said not mentioning the benefit was not necessary. Well, that's incorrect, and under Stinson, the commentary is binding, and so the way I would explain it and distinguish it is, counsel did not alert the panel who heard the prior appeal to binding authority that supported his position, both Lambert and the notes, which explains the errancy of that decision. It's obvious it doesn't bind this panel, and you're, well, I think you're required to follow Lambert, and that's the difference. Where they published it, there would have been an intra-circuit split. It would have to have been resolved. That was divested because it was an unpublished decision, but I would respectfully contend that Lambert controls that decision, despite DiRoberto, which I think is what they titled the unpublished decision. No, that's helpful, because I was trial counsel in Treadwell, and this situation, and the government should pay attention to this, is not, at least to me, is different than Treadwell. In Treadwell, Ricky Sluder and Randy Treadwell were saying, if you give us money, we will give it to charitable organizations, and this does seem a little bit different, but I'm hesitant because the other panel went the way, but I appreciate your explanation on that. I thank you for that, Your Honor. I'll take, since we've addressed, unless we want to address sentencing issues, I'd add a couple of points before going to Shaw, since I'm actually doing all right on the clock. One, when the government says we forfeit the financial institution claim, I don't think they get it quite right, and I think you should just look at the chronology. What happens is at the close of evidence on May 20th, the judge deems the Rule 29 motion is preserved, and I think a lawyer could consider that a general Rule 29. Even if not, the judge reserved ruling at that time. The defense case began. Then on May 22nd, it's a Friday, the court is dark, the clients aren't there, they're going over jury instructions. Mr. Cephas, defense counsel, expressly made an argument that there was insufficient evidence to support the affected financial institution extension of statute of limitations under FIREA, and the judge engaged in the discussion. The judge noted her concern that there may not have been evidence, that they didn't call any banker witnesses or banker, that the bank wasn't accused of being one of the victims, and then she ultimately resolved it for the government. At the end of that hearing, the May 22nd hearing, she denies the Rule 29s that she had reserved on, and I would respectfully contend, I'd ask you to look at United States v. Lydia Rodriguez just last week that talks about what's sufficient to preserve a claim, and I think that's enough. I think when Mr. Cephas brought it up to the judge before she ruled on Rule 29 and expressly said that it's sufficient. I understand that there had been a stipulation that these were financial institutions. The issue was that the jury had not been shown the stipulation. Well, there's two pieces to that. I think it's a great question, Judge. One, the stipulation is a fact stipulation on how that these were, that J.P. Morgan and EMC of Baltimore Bank are financial institutions, and so one argument is there just was insufficient evidence because the prosecution left the stipulation in his pocket or in their pockets, and under James, just because you get a defendant to sign something doesn't mean anything until you get it into the record either. Filing a DCF, it's very easy, but if you sit on your rights as defendant, as we know from my first argument, there may be repercussions. If you sit on your obligations as a prosecutor, there may be repercussions, and the repercussions here under James, which controls this, you left it in your pocket. The second argument is, which is clearly preserved, and they don't argue otherwise, is that there was insufficient evidence to support the jury instruction that they in fact affected a financial institution, that the any effect is too small. I'm looking under, I think it's Stargill. I think Stargill and Agnew, which is the first circuit case, would support the proposition that it has to be a higher standard, that if we look at it, that distressed homeowners who already can't, are underwater and can't pay their mortgages, this type of fraud getting $1,000 to $3,000 to modify them doesn't have sufficient risk to a financial institution. Is there a broader consequence depending on which of those two things is at issue? That is to say, if they are, if the any instruction is wrong and harmful, or there's no introduction of the financial institution? Six of one, half doesn't matter. Oh, come to the same consequence? Okay. And the last thing I'll say before I sit down and try to reserve is, I would ask you to take a close look at Shaw. Shaw stands for the proposition that the intent to defraud instruction that says all they have to show the government is an intent to deceive or cheat is insufficient, that the intent must be tethered to depriving the victim of property. And it's that connection, that nexus between the intent that makes intent to defraud. And respectfully, I don't think the government gives a fair review of his closing argument. They specifically argued intent to defraud was sufficient because he lied to the bank when he opened bank accounts. And his jury was plainly of the belief that that was sufficient. And it's not under Shaw. Under Shaw, he had the intent to deprive the victims of money or property, deceive or cheat them, not the bank who wasn't an alleged victim. And it's that disconnect that I would contend that after Shaw, which is Henderson says you can consider that, that's a time of appellate consideration, that after Shaw, that argument was lawfully invalid and in support of conviction under a lawfully invalid theory is improper and he would get a neutral conviction. You're running into your two minutes. I'm out. I'll sit down and thank you, Your Honors. Good morning. May it please the Court. Tom Stout on behalf of the United States. Your Honors, this was not, in fact, a close case. The defendant's retained expert took the stand in this case and opined that the conduct that the defendant admitted to in interviews with agents and the conduct that was testified to on his part by former employees were, in his own expert's words, complete misrepresentations. She conceded that she would never do a litany of things that he admitted to do and that multiple former employees testified that he did. The only evidence that he claims is exculpatory in this case is the idea that he contradicted his co-owner's instructions to defraud homeowners. But as we argued to the jury at trial and as the district court found in ruling on the Rule 29 motions, that argument cuts both ways and we submit he's trying to draw the unreasonable inference from that. Multiple former employees testified that he both instructed them to lie and stood by while his co-owner instructed them to lie and either acquiesced in her instructions or affirmatively endorsed them. It was only later in the scheme, after he became aware that his company was the subject of investigation by state attorney general offices and after he attempted to minimize his culpability by submitting a purported resignation letter, after which he continued to both manage the company and draw what were effectively owner salaries from the profits, did anybody suggest that he began contradicting instructions to lie? But even at that point, what that shows is not that he was innocent, but that he was aware that his co-owner was instructing employees of his company to lie and was more than happy to continue profiting from those instructions to defraud financially distressed homeowners so long as he could make it appear like his hands were clean. He did not resign. He did not do anything to stop his own company from defrauding homeowners at that point. He not only continued to make money from the scheme, he made more money going forward from that point from the scheme than he had before. So, Your Honor, this was not a close case, and the split verdict is not evidence of a close case. Defense counsel at trial argued... You know, most cases that aren't close cases don't come out with split verdicts and the jury doesn't take seven days. I understand that, Your Honor, and obviously we're not in the jury room and we don't know what's in their heads, but I believe that the split verdict here is perfectly consistent with a defense that Mr. George's trial attorney advanced to the jury. The counts on which Mr. George were acquitted were forced. I believe it was four. It may have been five substantive counts. They pertained to two specific victims, Salvador Lara and Lydia Beavers. Now, those victims, this was obviously not our position at trial, but it was one that we think a jury could reasonably have accepted, and defense counsel argued that they were separate from the rest of the scheme because the lies that were told to them were told by a man named Hamid Shalviri, who was a co-defendant in this case and who pleaded guilty. He was the boyfriend of the co-owner, Andrea Ramirez. And there were elements of the fraud that were committed specifically with respect to those two victims that could arguably have been cabined towards Mr. Shalviri. He sent them separate invoices in his own name for rent on properties that he claimed he now owned, and the checks that they paid to him were deposited into his own personal accounts. Now, the rest of his conduct was perfectly consistent with the rest of the scheme, and we believe it was done in the course of his employment by 21st century. So our position at trial was this was all part of one scheme. But defense counsel argued that that was separate, and those were the only two victim counts on which the jury acquitted. So I think the more reasonable inference here is that they struggled with those two specific victims and ultimately agreed with the argument defense counsel put forward. As to the rest of the counts, we don't believe there was any issue. And obviously this is a very fact-specific argument, and it's going to depend on the facts of each trial. But we believe when you look at the record here, it is very easily explainable why the jury might have struggled with those particular counts. Okay. I hear the argument. Okay. So, Your Honor, and Your Honors, I'd like to now move to the Bruton argument. I don't believe that what defense counsel claims about the record is actually borne out by a review of the record. If you review the closing arguments in this case, the government did not at any point suggest that the jury should convict Christopher George based on inculpatory out-of-court statements made by his co-defendants. If you examine the closing argument, the government cabined its closing argument into two distinct portions. In the first portion, it reviewed a timeline of facts specific to each defendant. In the second portion, it reviewed the elements of the charges as they applied to each defendant. Now, defense counsel argues that the government pivoted with respect to statements from Ms. Buck into this suggestion that Chris George was guilty as a result. But if you look at the record, that's not what happened. Going to that specific page of the transcript, the government made reference to Christopher George while discussing Crystal Buck only because Ms. Buck had signed a form that purported to explain to her that she could not make certain fraudulent statements. And this was in the context of Christopher George and management having become aware. And that was established through independent evidence. That was not established through any statement of Ms. Buck, who did not name Christopher George, did not say anything to directly or indirectly implicate him, out-of-court or in-court. So when the government made passing reference to the fact that management and Christopher George was aware of these investigations, it was to explain why they had issued this form for Crystal Buck to sign. There was no argument at all suggesting that Christopher George should be found guilty as a result of any out-of-court statements of Ms. Buck. Similarly, there was no argument that the jury should find Mr. George guilty as a result of any out-of-court statements of Mr. DiRoberto. If you look at the hologram attorney's citation specifically in the reply brief, defense counsel makes much of the idea that the government mentioned hologram attorneys somewhat in proximity to its argument on Christopher George. But if you look at the record again in the context for that statement, that is in the part of the argument where the government is explaining in serial how the law should be applied to the facts regarding each defendant. And that argument is specifically cabined to Mr. DiRoberto. Moreover, this idea of hologram attorneys, that was independently established by evidence to which defense counsel did not object at trial. Mr. George himself admitted that he was aware that there was only one attorney associated with the company who worked on a vanishingly small number of trials. I'm sorry, of loan modification applications. This isn't a point that was the subject of much factual dispute at trial. All of these points of which they complained were established by independent evidence to which defense counsel did not object. And if you review the closing argument, there is no instance in which the government invoked a state and out-of-court statement of Buck or DiRoberto in arguing that Christopher George was guilty. The government did refer to facts, but those facts had been established by independent evidence. I'd like to, unless the court has questions on the Bruton issue, I would like to move on to the financial institution, both the sufficiency of the evidence and the jury instruction. Defense counsel elides the timeline here. The timeline begins before trial. When the parties stipulate that, in fact, these entities are financial institutions, that was memorialized pretrial in proposed jury instructions given to the court that specifically said the parties have agreed to these facts. Can we move on to the any question? Because I gather, unless you disagree, I gather that we come to the same answer if you lose on the any question. Is that correct? Yes, Your Honor. So if you could address that one, because I'm inclined to think you lose, and maybe you can talk me out of it. On the any question, Your Honor, we believe that there is no authority for the idea that there is a specific quantum of effect that must be proven. Now, any is a pretty broad and encompassing thing. I mean, we all know that if it's any effect, I mean, you know, the philosophy professor's trick of throwing chalk at the blackboard and saying I just affected the coast of China. I mean, any can mean a lot of stuff. Yes, Your Honor. But it does the key distinction in the case law as discussed in the Mullins and Martin cases that we cited is not the quantum of effect, but the fact of an effect. And here there was an effect. There is nothing in Mullins, Martin, or in Stargill that suggests a specific quantum. And in his own papers, defense counsel cannot decide on what standard he would suggest this court adopt in lieu of any. I believe there are five different standards he puts forth, high risk of loss, sufficiently direct risk of loss, direct and significant risk of loss, realistic probability of loss, or substantial indirect effect. And all of them are different from any. They may all be different from any, Your Honor, but the problem here is no court has adopted any specific standard. And even if this court were to find that any is too broad, the evidence here clearly establishes the standards, at least the standards of Mullins and Martin. And those were cases in which the sister circuits found an effect on a financial institution based only on false statements and loan applications. So these weren't no steps had actually been taken towards actually causing a default. This was a mere increase of risk in terms of their risk analysis with regard to these lenders. And what we have in this case is something far beyond that, and it was overwhelmingly proven at trial, that 21st century employees were affirmatively instructing homeowners to cease communications with their lenders, and they told them that they were going to pay their mortgages on their behalf in order to cause them to not pay their mortgages. And that evidence was uncontested at trial and was overwhelming. So even if this court were to believe that the word any was error, the court can still affirm based on the overwhelming evidence that would independently satisfy, at a minimum, whatever quantum of effect is contemplated by Mullins and Martin. If we were to conclude that the any instruction is erroneous, what's the standard by which we judge harmlessness? Does it have to be harmless beyond a reasonable doubt? I'm sorry, Your Honor, I don't know the answer to that question. Okay. We'll find out. But, counsel, I did have a question for you on that. In reviewing the jury instruction conference, Mr. Seif has clearly objected to the instruction, but I don't remember there being any discussion of this a versus any. Was there any discussion of a versus any, and was there an objection to the use of the word any? Not in my recollection, Your Honor. But in your brief, I did not see you arguing that because there was no objection raised to specifically any, that it would be harmless as opposed to plain. No, Your Honor, we did not take that position. Okay. Do any of the members of the court have further questions on the financial institution jury instruction issue? Moving on, I would like to address the Treadwell issue. The language of this court was clear in Treadwell that the on behalf of language contemplated not only acting for the benefit of, but acting for an agent of, and there is no authority limiting that language. I would submit that in these particular circumstances, when somebody represents that they are acting on behalf of a government agency in order to gain somebody's trust, that's the only way to make sense of this enhancement, because somebody wouldn't act on behalf of HUD or FHA in order to gain funds for them. When it comes to acting on behalf of a government institution, that's the more natural reading of the enhancement. I'm not sure I understood the argument. Well, in the first instance, we believe the language of Treadwell settles it in that Treadwell very clearly says that on behalf of can mean acting as an agent of rather than for the benefit of. But independent of what we think is the clear holding of Treadwell, in this case, the only way to make sense of the enhancement when it comes to acting on behalf of a government agency is to read it as acting as an agent of, because one wouldn't act on behalf of a government agency in terms of for the purpose of the benefit of. So one of the things that 21st century employees falsely represented here was that they were part of the Obama stimulus plan. Now, it wouldn't make any sense to read that instruction as saying they were acting for the benefit of the Obama stimulus plan. The more natural reading in these circumstances is as an agent of or under the authority of. Okay, I get the argument. Do you agree with the proposition that if we disagree and remand for resentencing on any ground, the current guidelines are applicable, which means that we don't have to get to the IAC question of waiting? Yes, Your Honor, and I think another reason for that is I think the proper vehicle for that is if the guidelines have changed, the defendant can bring a motion under Section 3582C. No, all I wanted was a yes or no. And I see now that my time is up, so unless there are further questions from the Court. Thank you. Thank you. I'll try to run through four points briefly. One, my colleague and I both made the same error. We answered your question incorrectly, Judge Fletcher. 18 U.S.C. 3742G says if we get a remand on other grounds but the IAC claim, the guidelines in effect at the time of the original sentence control. I apologize for my error, but your answer is the answer is in the absence of granting the ABNY claim, any remand will have a plenary resentencing but under the old guidelines. So I'm wrong about that. So I guess we got the wrong answer from the government, too. We're two for two, but at least we've corrected it in time. The second thing I want to say briefly is I think the government's version of their overwhelming case, they take facts from an interview that Mr. George contested to get admission from an expert. They take testimony of others saying he did bad things and ignore the testimony of others that said he didn't. It was a close case for the reasons already identified. It's not the third point I'll make. It's not Bruton error. It's Crawford error, and there's no doubt that when that testimony came in, it was admitted against all defendants because there was no limiting instruction. That's how it was admitted against Mr. George. It's a plenary admission in the absence of restriction by the court. And, again, I urge you to read the closing arguments. I think it was an indictment of 21st century broadly in using their testimony to tar Mr. George. And the last thing I'll say is about the instructional error. It's de novo review. They've waived it. In their brief, they asked for de novo review in answer to Judge Owen's question. So the government's position in their briefs is it's de novo review, and the standard, Your Honor, Judge Fletcher, it's beyond a reasonable doubt under neither because it's a misconstructed element. In the absence of questions, I'll thank you for your patience. Thank you for the argument, Your Honors. Thank you both very much. The case just arguably submitted.
judges: Reinhardt, W. Fletcher, Owens